# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

**J.J. KELLER & ASSOCIATES, INC.,**

    **Plaintiff,**

  **v.**        **Case No. 25-CV-1321**

**TRADEX GLOBAL, INC.,**

    **Defendant.**

## DECISION AND ORDER

### 1. Background

J.J. Keller & Associates, Inc., owns four relevant copyrights:

- U.S. Copyright Reg No. TX0007367347 titled "Driver's Daily Log – Deluxe S/DVIR (601L)," issued in 2011;

- U.S. Copyright Reg No. TX0002776004 titled "Driver's Vehicle Inspection Report," issued in 1989;

- U.S. Copyright Reg No. TX0003419205 titled "Annual Vehicle Inspection Report," issued in 1989; and

- U.S. Copyright Reg No. TX0003419204 titled "Annual Vehicle Inspection Report-Label," issued in 1992.

(ECF No. 12, ¶¶ 2, 23.) These copyrights relate to forms and labels that fleet operators use to comply with Department of Transportation regulations.

J.J. Keller alleges that Tradex Global, Inc., which does business as Buck USA (ECF No. 12, ¶ 36), created and sold products that infringe on J.J. Keller's copyrights and trade dress. After Tradex did not respond to J.J. Keller's three cease and desist letters (ECF No. 12, ¶¶ 67-73) and continued to sell the allegedly infringing products, including to customers in Wisconsin, J.J. Keller brought this action. The amended complaint alleges four counts of copyright infringement in violation of the Copyright Act, 17 U.S.C. § 501 (ECF No. 12, ¶¶ 77-108), three counts of trade dress infringement in violation of the Lanham Act, 15 U.S.C. § 1125(a) (ECF No. 12, ¶¶ 109-41), four counts of violations of the Digital Millenium Copyright Act (DMCA), 17 U.S.C. § 1202 (ECF No. 12, ¶¶ 142-81), and one count of unfair competition under Wisconsin common law (ECF No. 12, ¶¶ 182-90). The parties subsequently jointly moved to the dismissal of Counts Four and Eleven, the copyright and DMCA claims regarding the Annual Vehicle Inspection Label. (ECF No. 50.) That motion will be granted. The court has subject matter jurisdiction, in part, under 28 U.S.C. § 1338(a) and (b).

## 2. Personal Jurisdiction

Tradex asserts that the court lacks personal jurisdiction over it. (ECF No. 28 at 12-25); *see* Fed. R. Civ. P. 12(b)(2).

Although personal jurisdiction may be either general or specific, *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012), J.J. Keller asserts only that specific personal jurisdiction is at issue. "To be subject to specific personal jurisdiction in a forum state, the defendant must have 'purposefully directed' its activities to the

forum state, and the litigation must relate to those activities." *NBA Props. v. HANWJH*, 46 F.4th 614, 621 (7th Cir. 2022).

A federal court looks to the long arm statute of the state in which it sits. *NBA Props.*, 46 F.4th at 620. Wisconsin's long arm statute confers personal jurisdiction to the full extent permitted by due process. *Felland*, 682 F.3d at 678. As a result, the constitutional and statutory analyses tend to merge. *Id.* "Once the requirements of due process are satisfied, then there is little need to conduct an independent analysis under the specific terms of the Wisconsin long-arm statute itself because the statute has been interpreted to go to the lengths of due process." *Id.*

Nonetheless, the court starts with the text of Wisconsin's long-arm statute, which, in relevant part, states:

> In any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, provided in addition that at the time of the injury, either:
>
> (a) Solicitation or service activities were carried on within this state by or on behalf of the defendant; or
>
> (b) Products, materials or things processed, serviced or manufactured by the defendant were used or consumed within this state in the ordinary course of trade.

Wis. Stat. § 801.05(4).

Courts have recognized that injury to intangible intellectual property, like a copyright, through infringement, may occur in the state where the copyright owner resides. *Casual Panache, Inc. v. Burmax Co.*, No. 15-cv-234-wmc, 2016 U.S. Dist. LEXIS 42033, at *5 (W.D. Wis. Mar. 30, 2016); *Store Decor Div. of JAS Int'l, Inc. v. Stylex Worldwide Indus.*, 767 F. Supp. 181, 183 (N.D. Ill. 1991). Thus, even if the

Case 1:25-cv-01321-BBC    Filed 02/12/26    Page 3 of 22    Document 53

infringement occurs in another state, infringement of a copyright owned by a Wisconsin resident results in an injury in Wisconsin, thus satisfying the first part of Wis. Stat. § 801.05(4). The second part of the statute, specifically paragraph (b), is satisfied because Tradex sold at least two of each of the allegedly infringing products in Wisconsin.

Alternatively, the allegations in the amended complaint present a prima facia basis for personal jurisdiction under Wis. Stat. § 801.05(3), which affords jurisdiction "[i]n any action claiming injury to person or property within or without this state arising out of an act or omission within this state by the defendant." The sale of allegedly infringing products to a person within this state is an act within the state by the defendant. *Casual Panache,* 2016 U.S. Dist. LEXIS 42033, at *5.

J.J. Keller having established a prima facie case of specific personal jurisdiction under Wisconsin's long-arm statute, the burden shifts to Tradex to show that application of the long-arm statute would offend due process. *See Knot Just Beads v. Knot Just Beads, Inc.*, 217 F. Supp. 2d 932, 934 (E.D. Wis. 2002); *see also Felland*, 682 F.3d at 678 ("compliance with the Wisconsin long-arm statute creates a presumption that constitutional due process is satisfied, although the defendant of course has the opportunity to dispute personal jurisdiction on purely constitutional grounds").

Asserting specific personal jurisdiction over Tradex fully comports with due process. This action cannot be meaningfully distinguished from the court of appeals' decision in *NBA Properties*, 46 F. 4th 614, which forecloses Tradex's argument here.

As in *NBA Properties,* the defendant here "established an online store, using a third-party retailer, Amazon.com," *NBA Props.*, 46 F.4th at 624, and Walmart.com. In doing so, "it unequivocally asserted a willingness to ship goods to [Wisconsin] and established the capacity to do so." *Id.* "When an order was placed, it filled the order, intentionally shipping an infringing product to the customer's designated [Wisconsin] address." *Id.*

Because personal jurisdiction is based on the defendant's actions, even if the only known Wisconsin purchasers acted with the pretext of establishing personal jurisdiction, it would not negate personal jurisdiction. *NBA Props.*, 46 F.4th at 624. Regardless of the motive of the purchaser, Tradex purposely directed two sales of each of the allegedly infringing products to customers in Wisconsin. *Id.*

That there were perhaps only two known sales to Wisconsin customers is not inconsistent with personal jurisdiction. There is no fixed requisite number of sales to establish personal jurisdiction. *NBA Props.* 46 F.4th at 624-25. Even a single sale may be sufficient in similar circumstances. *Id.*

Tradex's contacts with Wisconsin—the sale of allegedly infringing goods in the state—are related to the plaintiff's alleged injury. *NBA Props.*, 46 F.4th at 626-27.

Finally, requiring Tradex to defend this action in Wisconsin is consistent with traditional notions of fair play and substantial justice. *See NBA Props.*, 46 F.4th at 627. That Tradex contracted with an agent to handle payment and shipment does not change Tradex's status as the seller of record. The presence of that third party does not sever the relationship between seller and consumer any more than would, for

5

example, the fact that delivery was performed by UPS as opposed to a Tradex employee. Amazon's and Walmart's third-party seller programs are merely more mainstream adaptations of the longstanding third-party logistics model. These programs make it easy for sellers to access buyers nationwide. That convenient access to consumers, however, is a double-edged sword. When sellers take advantage of such platforms to reach into formerly "distant" or "inconvenient" places to sell their products, those forums will often be able to reach back.

There being no material factual dispute, there is no basis for an evidentiary hearing. The court will deny Tradex's motion to dismiss for lack of personal jurisdiction.

### 3. Venue

Tradex also asks the court to dismiss the case for improper venue but does not meaningfully develop any argument in support except to note that under 28 U.S.C. § 1400(a) a copyright infringement suit *may* be brought in the district where the defendant resides. (ECF No. 28 at 25.) That a suit may be brought elsewhere does not establish that it could not be brought here.

By failing to develop an argument Tradex has forfeited any assertion that venue is inappropriate. *See, e.g.*, *500 Wis., LLC v. JPMorgan Chase Bank, NA*, No. 18-CV-1845, 2020 U.S. Dist. LEXIS 136169, at *11 (E.D. Wis. July 31, 2020) ("Perfunctory and undeveloped arguments are forfeited."). Developing an argument for the first time in reply is too late. *See Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009).

### 4. Failure to State a Claim

#### a. Applicable Law

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ruiz v. Pritzker*, 162 F.4th 886 (7th Cir. 2025) (quoting *Indiana Land Tr. #3082 v. Hammond Redevelopment Comm'n*, 107 F.4th 693, 698 (7th Cir. 2024)). The court views those well-pled facts in the light most favorable to the plaintiff and draws all reasonable inferences in the plaintiff's favor. *Id.*

#### b. Copyright Claims

Tradex argues that J.J. Keller registered a copyright only with respect to the text of its products and therefore its claim to all allegedly infringing design elements must fail. (ECF No. 28 at 27-29.)

A copyright applicant must classify his work into one of five categories. 37 C.F.R. § 202.3(b)(1). "[T]he application should be submitted in the class most appropriate to the predominant type of authorship in the work as a whole." 37 C.F.R. § 202.3(b)(2)(iii). That J.J. Keller submitted its applications under Class TX as a "nondramatic literary work[]" reflects only that this classification predominated over other elements; it does not constitute a disclaimer of any other protectible aspect of the works.

Tradex's reliance on *Nwosuocha v. Glover*, No. 23-703, 2024 U.S. App. LEXIS 11419 (2d Cir. May 10, 2024), is misplaced. In that unpublished decision, the plaintiff claimed ownership of two distinct works—a musical work and a sound recording. *Id.*

at *2-3. The defendant allegedly infringed on the musical work, but the plaintiff had registered only the sound recording. *Id.* at *3. Therefore, the court affirmed dismissal of the action because the plaintiff had failed to satisfy 17 U.S.C. § 411(a)'s registration requirement before bringing suit. *Nwosuocha*, 2024 U.S. App. LEXIS 11419, at *3.

J.J. Keller, however, registered copyrights of four individual works, albeit works that contain both textual and graphic elements. When an author registers a work under the TX class, the registration encompasses both the textual and non-textual elements. *See, e.g.*, *S.C. Johnson & Son, Inc. v. Turtle Wax, Inc.*, No. 89 C 5792, 1989 U.S. Dist. LEXIS 12338, at *3 (N.D. Ill. Oct. 13, 1989); *S. Beach Skin Care v. Dermaset, Inc.*, No. 13-24645-CIV-BLOOM/VALLE, 2014 U.S. Dist. LEXIS 193070, at *14 (S.D. Fla. Aug. 18, 2014); 17 U.S.C. § 408(c)(1) ("This administrative classification of works has no significance with respect to the subject matter of copyright or the exclusive rights provided by this title."). Thus, J.J. Keller's copyright encompasses the design elements of the work notwithstanding its classification as TX.

Tradex also alludes to what is often referred to as the blank form rule, *see* 17 U.S.C. § 102(b); 37 C.F.R. § 202.1(c). (ECF No. 28 at 31-32.) "Blank forms, such as time cards, graph paper, account books, diaries, bank checks, scorecards, address books, report forms, order forms and the like, which are designed for recording information and do not in themselves convey information" are not subject to copyright. 37 C.F.R. § 202.1(c).

Related to the blank form rule is the merger doctrine, *see Baker v. Selden*, 101 U.S. 99 (1879), to which Tradex also refers. The merger doctrine applies when an idea is capable of expression in only a limited number of ways. *See Datacarrier S.A. v. WOCCU Servs. Grp., Inc.*, No. 16-CV-122-JDP, 2018 WL 1514456, at *7 (W.D. Wis. Mar. 27, 2018). Thus, rather than reflecting originality or creativity, the work reflects merely the expression of an idea.

Tradex does not meaningfully develop its blank form and merger doctrine arguments. Instead, both arguments appear to rely on Tradex's incorrect contention that J.J. Keller's copyright did not encompass any design elements of the works. (*See* ECF No. 28 at 32 ("Because Keller has not pled any copyright registration that would protect that layout, the merger doctrine will render unprotectable those text compilations, drawn from the Federal Register, which have minimal means of displaying the same information to meet the desired purpose or function.").)

Because the copyrights cover the design elements of the works, the fact that the textual content is largely required by federal regulations (*see* ECF No. 35 at 29, fn. 18) is not inconsistent with J.J. Keller's copyrights. It is the originality or creativity in that design that J.J. Keller alleges it copyrighted and that it alleges Tradex infringed by producing products that were visually largely identical to J.J. Keller's copyrighted works.

The degree of design originality or creativity necessary to render a form protectable is comparatively minimal. *See Bucklew v. Hawkins, Ash, Baptie & Co., LLP*, 329 F.3d 923, 929 (7th Cir. 2003). For example, in terms of crafting forms to

comply with government submission requirements, the requisite originality may be reflected in "choice and size of font, the size of cells and columns, whether and where to use color, the wording of labels and headings …, and whether to use boldface or italics for column headings" *Id.* at 926. Because those design elements of J.J. Keller's works are copyrightable, Tradex has failed to prove that J.J. Keller's copyright claims must be dismissed.

Finally, Tradex argues that J.J. Keller's claim regarding the '004 copyright must be dismissed because its copyright covers only the French translation of the Driver's Vehicle Inspection Report. (ECF No. 28 at 29, 30-31.) J.J. Keller responds to this argument only through footnotes (ECF No. 35 at 35, fn. 13; 38-39, fn. 19), which is never a good way for responding to, advancing, or preserving an argument, *Long v. Teachers' Ret. Sys. of Ill.*, 585 F.3d 344, 349 (7th Cir. 2009) (noting that a party may forfeit an argument by addressing it only in a footnote); *United States ex rel. Kroening v. Forest Pharm., Inc.*, 155 F. Supp. 3d 882, 897 (E.D. Wis. 2016). It asserts that the registration states that it encompasses both the English version and the French translation. (ECF No. 35 at 34, fn. 13.)

Although the copy presented to the court is barely legible, the court can discern that the registration refers to both the English terms and their French translation. (ECF No. 12-4 at 3.) Thus, the French translation appears to be merely a derivative work of the registered English work. *See* 17 U.S.C. § 101 (defining derivative work). Tradex does not address this argument in reply. Therefore, it has failed to prove that

the '004 copyright does not encompass the English version of the work. Accordingly, the court will deny Tradex's motion to dismiss J.J. Keller's copyright claims.

### c. Digital Millenium Copyright Act Claims

The Digital Millenium Copyright Act (DMCA) prohibits the removal of copyright management information, 17 U.S.C. § 1202(b), and presenting false copyright management information, 17 U.S.C. § 1202(a); *see also* 17 U.S.C. § 1202(c) (defining copyright management information).

J.J. Keller's works all contained copyright management information such as "[t]he name of, and other identifying information about, the copyright owner of the work." 17 U.S.C. § 1202(c)(3); (ECF Nos. 12-1 at 2 (driver's daily log); 12-3 at 2-4 (driver's vehicle inspection report); 12-5 at 2, 4, 6 (annual vehicle inspection report); 12-7 at 2.) On each of Tradex's versions, J.J. Keller's copyright management information is absent and instead in roughly the same space there appears "© Copyright Buck USA." (ECF No. 12-16 at 2 (annual vehicle inspection report); 12-18 at 2 (driver's daily log); 12-19 at 2-3 (driver's vehicle inspection report).)

It is difficult to envision a more straightforward claim under § 1202(a) and (b). J.J. Keller has plausibly alleged that Tradex copied J.J. Keller's copyrighted works, removed J.J. Keller's copyright management information, and included its own false copyright management information. The amended complaint is sufficiently clear as to what specific copyright management information was allegedly deleted (J.J. Keller's copyright notice) and as to the specific allegedly false copyright management information that was added (Buck USA's copyright notice).

Case 1:25-cv-01321-BBC    Filed 02/12/26    Page 11 of 22    Document 53

Granted, there is some authority that a § 1202(b) claim will not lie if, rather than starting from the copyrighted work and removing the copyright management information, the infringer simply started from a proverbial blank slate and created an infringing work that omitted the copyright information. *See Design Basics v. Van Prooyen Builders, Inc.*, No. 2:19CV100-PPS/SLC, 2021 U.S. Dist. LEXIS 41425, at *4-5 (N.D. Ind. Mar. 5, 2021); *but see GC2 Inc. v. Int'l Game Tech. PLC*, 255 F. Supp. 3d 812, 822 (N.D. Ill. 2017) (noting conflict with this view). The idea is that there can be no removal or alteration of copyright management information if it was not there in the first place. Failing to add it in a recreation of a copyrighted work is not the same. But at the motion to dismiss stage the standard is plausibility, and all inferences are drawn in favor of the plaintiff. It is certainly plausible that, rather than merely recreating J.J. Keller's works, Tradex created its allegedly infringing works by starting from J.J. Keller's works.

Again, drawing all reasonable inferences in J.J. Keller's favor, it has plausibly alleged that Tradex acted with the requisite double scienter to "knowingly and with the intent to induce, enable, facilitate, or conceal infringement" "provide copyright management information that is false." 17 U.S.C. § 1202(a). The court will deny Tradex's motion to dismiss J.J. Keller's DMCA claims.

### d. Trade Dress

Tradex states that it is challenging J.J. Keller's "common law trade dress and unfair competition" claims. (ECF No. 28 at 34.) However, J.J. Keller's three trade dress infringement claims are under the Lanham Act, 15 U.S.C. § 1125(a). (ECF No.

12, ¶¶ 110-41.) It also alleges a Wisconsin common law unfair competition claim (ECF No. 12, ¶¶ 183-90), but Tradex does not address that claim in its motion to dismiss (ECF No. 28 at 34-36). Therefore, the court considers only the sufficiency of J.J. Keller's statutory trade dress claims.

"The term trade dress refers to the 'appearance of a product when that appearance is used to identify the producer.'" *Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1015 (7th Cir. 2005) (quoting *Publications Int'l, Ltd. v. Landoll, Inc.*, 164 F.3d 337, 338 (7th Cir. 1998)). "To prevail on a trade dress claim, the plaintiff must demonstrate that (1) its trade dress has acquired secondary meaning and (2) defendants' use of the trade dress is likely to cause confusion among consumers." *Millenium Outdoors, LLC v. Leader Access., LLC*, No. 23-cv-106-jdp, 2025 U.S. Dist. LEXIS 215085, at *5 (W.D. Wis. Oct. 30, 2025). Additionally, because the trade dress at issue here is not registered, the plaintiff must also prove that the trade dress is non-functional. *Id.* (citing 15 U.S.C. § 1125(a)(3); *Bodum USA, Inc. v. A Top New Casting Inc.*, 927 F.3d 486, 492 (7th Cir. 2019)).

Tradex argues that J.J. Keller's trade dress claims fail because it "does not provide a single fact or source to support the requirement that its alleged color trade dress, overlapping with its copyright claims, has become distinctive in the minds of consumers. Rather, it attaches exhibits which, themselves, show multiple third-party uses of the same exact colors for identical goods." (ECF No. 28 at 35.)

At the pleading stage, a plaintiff does not need to identify instances of actual consumer confusion to state a trade dress claim. Rather, it need only be plausible

from the details alleged in the complaint that the plaintiff will be able to show that the defendant's use of the trade dress is likely to cause confusion. J.J. Keller has done so.

As for Tradex's suggestion that there are many other sellers of products using J.J. Keller's allegedly distinctive trade dress (*see* ECF No. 12-10 at 3-8 (Amazon listings including similar products from other sellers)), for a variety of reasons, the presence of other imitators may ultimately undermine a trade dress claim. But even widespread imitation does not necessarily merit dismissal at the pleading stage where all reasonable inferences are drawn in favor of the plaintiff. After all, widespread imitation may itself be proof that the plaintiff's trade dress has, in fact, obtained a secondary meaning on which others seek to capitalize. Success attracts imitators. And insofar as the argument may be made that a proliferation of imitators suggests J.J. Keller's acquiescence, Tradex's own brief provides an explanation— most of the sellers of similar products are Chinese companies (ECF No. 28 at 8) that may be beyond J.J. Keller's practical reach.

J.J. Keller's trade dress claims overlap with its copyright claims in that the elements of its works that have allegedly acquired secondary meaning are the design elements it copyrighted. But Tradex is incorrect insofar as it is arguing that copyright and trade dress are mutually exclusive. (ECF No. 28 at 35.)

The copyright and trade dress (or trademark) claims are distinct, with copyright primarily concerned with protecting creativity and trademark and trade dress primarily concerned with protecting fair competition. *See Phx. Entm't, LLC v.*

*Rumsey*, 829 F.3d 817, 825 (7th Cir. 2016). A plaintiff merely cannot use trademark law as a substitute for copyright. *See, e.g.*, *Shah v. NYP Holdings, Inc.*, No. 21-cv-06148, 2023 U.S. Dist. LEXIS 8076, at *10-11 (N.D. Ill. Jan. 18, 2023). To hold otherwise would improperly extend the protections of copyright beyond their constitutional limits. *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 33-34 (2003). For example, in *Phoenix Entertainment Partners, LLC, v. Rumsey*, 829 F.3d 817 (7th Cir. 2016), the defendants allegedly copied the plaintiffs' audio and video files – a classic matter of copyright infringement. The plaintiffs, however, did not own the copyrights and instead attempted to resort to trade dress to achieve the same ends. The court of appeals rejected their attempt to repackage their claims under the Lanham Act. *See id.* at 826.

Nonetheless, because of the overlap, caution must be exercised to ensure that any trial does not result in a double recovery for the plaintiff. *See Spectrum Brands, Inc. v. I&J Apparel, LLC*, No. 16-cv-741-jdp, 2017 U.S. Dist. LEXIS 80999, at *9 (W.D. Wis. May 25, 2017). But that is a matter for trial; it is not a basis to dismiss the plaintiff's trade dress claims at this preliminary stage.

In sum, J.J. Keller has alleged plausible trade dress claims that may proceed alongside its copyright claims. It adequately identifies its alleged protectable trade dress in each of the relevant works. (ECF No. 12 at ¶ 30.) It is plausible that it will be able to prove that its trade dress is not functional, has acquired a secondary meaning, and the defendant's use of the trade dress is likely to cause confusion among

consumers. Accordingly, the court will deny Tradex's motion to dismiss J.J. Keller's trade dress claims.

### 5. Motion for a Preliminary Injunction

J.J. Keller seeks a preliminary injunction barring Tradex "from advertising, distributing, or selling goods infringing J. J. Keller's intellectual property, ordering impoundment of the goods by turning them over to J. J. Keller's counsel until final judgment, and ordering Defendant to recall unsold infringing goods already distributed to third parties such as Amazon and Walmart." (ECF No. 17 at 36.)

Given their nature, copyright and similar actions commonly give rise to preliminary injunctions. *See* 5 Nimmer on Copyright § 14.06[A][1][c]. Preliminary injunctive relief, however, remains an extraordinary remedy. *See Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of Am. Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008). It is a far-reaching and consequential power that a court should exercise only when it is clearly demanded. *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020) (citing *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008); *Girl Scouts*, 549 F.3d at 1085).

"To obtain a preliminary injunction, a plaintiff 'must establish that it has some likelihood of success on the merits; that it has no adequate remedy at law; [and] that without relief it will suffer irreparable harm.'" *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019) (quoting *Planned Parenthood of Ind. & Ky., Inc. v. Comm'r of Ind. State Dep't of Health*, 896 F.3d 809, 816 (7th Cir. 2018)). Only if the plaintiff satisfies each of these three threshold requirements does the

court proceed to the next phase of balancing the harms to the parties and whether the injunction is in the public interest. *GEFT Outdoors,* 922 F.3d at 364. In this second phase the court employs a sliding scale whereby, for example, a great likelihood of success may tip the balance in the plaintiff's favor notwithstanding a significant likelihood of harm to the defendant. *Id.*

As discussed above, J.J. Keller has pled plausible claims. However, in assessing a motion for a preliminary injunction, the court's analysis shifts from whether it is plausible that the plaintiff may prevail to whether it is likely.

An ordinary observer comparing the plaintiff's and the defendant's works would very likely conclude that Tradex copied J.J. Keller's works. *Cf. Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 508-09 (7th Cir. 1994) (discussing the ordinary observer test); *Design Basics LLC v. J & V Roberts Inv., Inc.*, 130 F. Supp. 3d 1266, 1274-75 (E.D. Wis. 2015) (same). The works are essentially identical; only if scrutinized like a child's Spot the Difference picture puzzle would a viewer come to recognize the variations.

Nonetheless, as the discussion above regarding Tradex's motion to dismiss highlights, not even blatant copying necessarily violates federal copyright or trade dress law if the copied work is not protected in the first place. In opposing J.J. Keller's motion, Tradex relies on many of the same arguments it made in seeking dismissal of the amended complaint. As explained above, J.J. Keller's registrations encompass the design elements of the works and not only the text. The works are not merely blank forms but rather, as recognized in *Bucklew*, 329 F.3d at 926, encompass

protectable creative design elements. The merger doctrine does not apply because there are a vast number of ways to comply with the underlying federal regulations. A dozen designers starting with a blank page and the applicable federal regulations are likely to produce a dozen distinct means of complying with the regulations.

This is not to say that each copyright is equally as strong. But as to each work, J.J. Keller has demonstrated the requisite likelihood of success on the merits. And for the reasons set forth above in conjunction with the discussion of J.J. Keller's DMCA and trade dress claims, it has likewise demonstrated that it is sufficiently likely to succeed on the merits of those claims.

As to the risk of irreparable harm, there is no presumption of irreparable harm in copyright actions. *See Flava Works, Inc. v. Gunter*, 689 F.3d 754, 755 (7th Cir. 2012). However, a presumption of irreparable harm arises upon a showing of a likelihood of success on the merits of a trade dress claim. 15 U.S.C. § 1116(a).

J.J. Keller states that it "is suffering irreparable harm stemming from lost sales, customers, market share, goodwill, and reputation due to Defendant's infringement." (ECF No. 17 at 34.) Although it explains how it has allegedly lost sales, incurred increased advertising costs, and been forced to lower prices as a result of Tradex's infringement, these sorts of damages are largely compensable through monetary damages, and thus J.J. Keller has an adequate remedy at law. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Injuries to goodwill and reputation are harder to address through monetary damages, but J.J. Keller fails to explain how any ongoing infringement will result in

irreparable harm. Its assertions are largely conclusory, as if it was merely pleading the elements for a preliminary injunction in a copyright action rather than proving that a preliminary injunction is necessary. For example, J.J. Keller alludes to its copyrighted works acting as a means of introducing customers to its other related products, but it does not develop this argument in its briefs or provide concrete examples.

Notably, the underlying products are consumables that are likely to garner frequent recurring purchases. A J.J. Keller customer who finds copycat forms for sale on Amazon may purchase those versions while they are available. But when the time comes for that customer to make a new purchase and the infringing product is no longer available (because, for example, J.J. Keller prevails in this action and obtains a permanent injunction), there is every reason to believe that the customer would return to purchasing J.J. Keller's products. In other words, there is no reason to suspect that the purchase of Tradex's forms would lead a J.J. Keller customer to transfer its goodwill to Tradex such that the customer would stick with Tradex if it then chose to develop a new non-infringing competing product. Nor is there any evidence that Tradex offers the "other transportation industry products and services" (ECF No. 17 at 9) that J.J. Keller alleges its forms introduce its customers to.

There is a strong public interest in safeguarding copyright and trade dress, but the primary means of doing this is through an enforcement action rather than a preliminary injunction. And while litigation takes time, J.J. Keller's delays in

bringing this action belie a sense of urgency. J.J. Keller has known of Tradex's sales for years before it brought this action. (*See* ECF No. 12, ¶ 62.)

In sum, J.J. Keller has demonstrated that it has some likelihood of success on the merits. However, should it ultimately prevail, damages will nearly fully address its injuries, and thus it largely has an adequate remedy at law. While the court accepts that J.J. Keller will suffer some manner of irreparable harm absent a preliminary injunction, J.J. Keller has failed to prove that this harm will be anything more than minimal, if not de minimis. Although it is perhaps more likely than not that J.J. Keller will prevail in this action, it is not certain. J.J. Keller has failed to prove that the balance of harms tips in favor of the extraordinary remedy of a preliminary injunction. The erroneous grant of an injunction stands to harm Tradex in the form of lost sales (J.J. Keller does not address the matter of bond under Fed. R. Civ. P. 65(c)) and the public in the form of higher prices from competing (but not infringing) products. J.J. Keller having failed to sustain its burden to prove that a preliminary injunction is necessary, the court will deny its motion.

### 6. Motion to Strike

Tradex asks the court to strike portions of the declarations that Rustin Keller and Adrienne Hartman submitted on behalf of J.J. Keller. (ECF No. 33.)

Motions to strike are disfavored. *See Redwood v. Dobson*, 476 F.3d 462, 470-71 (7th Cir. 2007) (discussing motions to strike in the court of appeals); *Custom Vehicles, Inc. v. Forest River, Inc.*, 464 F.3d 725 (7th Cir. 2006) (same). There are few instances where they are appropriate. Rule 12(f), on which Tradex inappropriately relies,

underscores this in that it applies only to pleadings. There is no rule authorizing a motion to strike portions of affidavits submitted in support of a motion for a preliminary injunction. Even Rule 56(c)(4), which states the requirements of affidavits or declarations submitted in support of a motion for summary judgment, does not explicitly authorize a motion to strike for non-compliance (although courts retain the inherent authority to strike non-compliant submissions under Rule 56(e)(4)). If a party regards an opponent's evidence as deficient, the appropriate response is generally to present that argument in its brief rather than resort to a motion to strike. *Berg v. Verizon Wireless*, No. 13-cv-1-bbc, 2013 U.S. Dist. LEXIS 135241, at *2-3 (W.D. Wis. Sep. 20, 2013); *Hernandez v. Forest Pres. Dist.*, No. 08-cv-5731, 2011 U.S. Dist. LEXIS 107629, at *3-4 (N.D. Ill. Sep. 21, 2011).

Permitting a party to present arguments in a motion to strike that it should have made in a response brief simply allows the party to evade the court's page limits. *See Redwood*, 476 F.3d at 471. The result creates needless work for an opponent and the court and undermines judicial economy. *Id.*

Accordingly, the court will deny Tradex's motion to strike.

**IT IS THEREFORE ORDERED** that the defendant's motion to dismiss (ECF No. 27) is **denied**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for a preliminary injunction (ECF No. 16) is **denied**.

**IT IS FURTHER ORDERED** that the plaintiff's motion to restrict certain documents (ECF No. 15) is **granted**.

**IT IS FURTHER ORDERED** that the defendant's motion to strike (ECF No. 33) is **denied**.

**IT IS FURTHER ORDERED** that the parties' stipulated motion to amend the first amended complaint (ECF No. 50) is **granted** and counts four and eleven are dismissed.

Dated at Green Bay, Wisconsin this 12th day of February, 2026.

*s/ Byron B. Conway*
BYRON B. CONWAY
U.S. District Judge